**Sandra LAZAR, Plaintiff, Appellant,**

v.

**Samuel PIERCE, etc., et al.,
Defendants, Appellees.**

**No. 84–1829.**

United States Court of Appeals,
First Circuit.

Argued Jan. 10, 1985.

Decided March 21, 1985.

Rehearing and Rehearing En Banc
Denied May 13, 1985.

Douglas Letter, Civ. Div., Dept. of Justice, Washington, D.C., with whom John F. Cordes, Civ. Div., Dept. of Justice, Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Lincoln C. Almond, U.S. Atty., Providence, R.I., Gershon Ratner, Associate Gen. Counsel for Litigation, Howard Schmeltzer, Sp. Asst. to the Associate Gen. Counsel for Litigation, Jonathan Strong and Richard C. Stearns, Attys., Office of Gen. Counsel, Dept. of Housing and Urban Development, Washington, D.C., were on brief, for defendant, appellee Secretary of Housing and Urban Development.

William M. Walsh, Providence, R.I., for defendant, appellee East Providence Housing Authority.

Alan R. Tate, Providence, R.I., with whom Iannuccillo & Hines, Inc., Providence, R.I., was on brief, for defendant, appellee Bullocks Point Village.

John M. Roney, Providence, R.I., with whom Roney & Labinger and John W. Dineen, Rhode Island Legal Services, Providence, R.I., were on brief, for plaintiff, appellant.

Allan G. Rodgers, Massachusetts Law Reform Institute, Inc., Boston, Mass., on brief for Coalition for Basic Human Needs, Massachusetts Union of Public Housing Tenants, Greater Boston Legal Services, Legal Assistance Corp. of Central Massachusetts, Massachusetts Law Reform Institute, Nat. Consumer Law Center, and Western Massachusetts Legal Services, amici curiae.

E. Richard Larson, American Civil Liberties Union Foundation, New York City, and Bruce S. Gelber, Gen. Counsel, Nat. Committee Against Discrimination in Housing, Washington, D.C., on brief for American Civil Liberties Union, and the Nat. Committee Against Discrimination in Housing, amici curiae.

Before BREYER, ALDRICH and TORRUELLA, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

In this Civil Rights action plaintiff, after obtaining a consent decree in which it was expressly provided that attorney's fees were not to be awarded, sought to reopen to recover fees. The district court denied the relief, and plaintiff appeals. We affirm.

Plaintiff is a tenant in a housing complex owned by defendant Bullocks Point Village Associates (Bullocks). Bullocks charges low rents to qualifying low income renters as a result of subsidies under section 8, 42 U.S.C. § 1437f, and section 236, 12 U.S.C. § 1715z-1, of the U.S. Housing Act, from the defendant U.S. Department of Housing and Urban Development (HUD). Plaintiff

was a section 8 tenant. In March 1983, Bullocks notified her that it would no longer recognize her as eligible for the reduced rent. Defendant East Providence Housing Authority (Housing Authority), by a letter to plaintiff, confirmed Bullocks' decision to deny renewal of her section 8 status, and stated its intention to enforce the decision. For reasons that we need not detail, it was a violation of HUD regulations to do this without showing good cause, which Bullocks failed to do. Plaintiff brought this action seeking a declaratory judgment against Bullocks and the Housing Authority that she was entitled to continue her low rental, and for an order that HUD inform the other defendants of their mistake and, in effect, republish its regulations. When depositions indicated the impropriety of Bullocks' conduct, settlement negotiations commenced, HUD siding with plaintiff. HUD also agreed to republish its section 236 regulations. Although this would benefit the class that plaintiff had moved to represent, but which motion she had not pursued, it was of no value to plaintiff's claim under section 8.

During settlement discussions, plaintiff's counsel requested the inclusion of attorney's fees. HUD refused absolutely. Although the Housing Authority indicated some flexibility, the conversations broke down. Plaintiff filed a motion requesting the court to intervene, but defendants objected, and no action was taken. Finally, upon plaintiff's counsel becoming convinced that the other defendants would not contribute fees if HUD would not, and of HUD's steadfastness, plaintiff entered into a consent decree, without pursuing the question of fees with the court. The decree stipulated, both that fees would not be paid (presumably waiving a fee claim under 42 U.S.C. § 1988), and that plaintiff would not use the settlement as the basis for a separate claim for fees against HUD under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.

A week after the parties had executed, and the court had approved, this decree, plaintiff moved to reopen to challenge the fees' waiver, and to obtain the fees. While it appears that plaintiff's counsel had had this intention all along, he had notified no one of it at the time the decree was entered. He concedes he believed the parties would not have consented to the decree had he insisted on fees.

Counsel would justify his position on the ground of duress. He argues that defendants, by offering to afford his client full relief on the condition that he sacrifice his own interest, left him no ethical choice but to settle under their terms. Hence, duress. To this we put three questions. 1. How ethical is it for counsel to have obtained a commitment from the other parties, believing it could not be obtained without a waiver, while secretly intending subsequently to seek court intervention to obtain more? 2. If there were ethical problems, and perhaps duress, why did counsel not pursue the motion seeking the court's assistance? 3. How realistic is plaintiff's counsel in saying that the Housing Authority would have persisted in not paying fees?

We begin with the last question. The Housing Authority's position is very difficult to justify. Here was a defendant that not only ultimately conceded full liability, but, on the record, had to do so. How likely was it that it would have stood trial, rather than agree in advance to fees, only to incur the time, trouble, and expense of trial, and doubtless a larger statutory fee in the end? It is hard to think what, if plaintiff had proceeded to court at the outset, the Housing Authority could have said in its defense.

While we are critical of plaintiff's counsel for giving up on this basis, we are even more critical of the Housing Authority. It seems apparent that it was playing on counsel's difficult dilemma in exactly the manner plaintiff asserts. This was not a bona fide compromise.[1]

---

**1.** The district court found that "defense counsel" at no time acted in "an unethical manner." As to HUD's counsel, this was obviously so. As to the others, while there may have been no consciously unethical conduct, to object to going to the court, and to object to paying any fee, does

HUD's situation was entirely different. Its liability for attorney's fees rested solely upon the EAJA, requiring a showing that its conduct was not "substantially justified." Bullocks and the Housing Authority were the real defendants, and HUD joined with plaintiff as soon as she developed the facts against them. Its gratuitous republication of its section 236 regulations showed no impropriety towards plaintiff, or anyone. We agree with the district court that this would not have been a case for attorney's fees, had the court reached that question. *Cf. Nadeau v. Helgemoe*, 581 F.2d 275, 278, 281 (1st Cir.1978); *Ashburn v. United States*, 740 F.2d 843, 849 (11th Cir. 1984); *Natural Resources Defense Council v. U.S.E.P.A.*, 703 F.2d 700, 706–12 (3rd Cir.1983). The balance of this opinion will accordingly relate to the state defendants' liability for fees under 42 U.S.C. § 1988.

We do not consider plaintiff's counsel's ethical problem to be the stark one contended. Whatever may be the duty of counsel in ordinary litigation to subordinate his personal interests to those of his client, section 1988 does not segregate these interests. Rather, by entitling a prevailing plaintiff to fees, it in effect makes the fee recovery part of the cause of action. This, like the substantive provisions of the Act, although for the benefit of the individual plaintiff, is for the broader Congressional purpose of compelling constitutional and statutory good conduct by encouraging private enforcement through "private attorneys general" willing and able to undertake action. *See King v. Greenblatt*, 560 F.2d 1024, 1026 (1st Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161; S.Rep. No. 1011, 94th Cong., 2d Sess., reprinted in 1976 U.S.Code Cong. & Ad.News 5908, 5912–13. Of course plaintiff's counsel may elect to waive, but for a defendant to require him to forgo his fee (the instant case being a classic example, since the so-called settlement provided no available funds, and, by hypothesis, the client was indigent) or to attempt to negotiate an unreasonable fee, by playing upon counsel's concern for his client, is contrary to the very intendment of the Act. And, correspondingly, present plaintiff's counsel's acceptance of the situation, while perhaps viewable as ethical in the particular, was not ethically required under the Act's broad purpose.

Counsel, apart from his secret plan to rescind, in accepting the restriction was not only absolving the state defendants (assuming Bullocks was also such) of the liability intended,[2] but was participating in diminishing the Act's future appeal, to himself and others. If counsel can foresee themselves subject to being euchred out of their fee, even though successful, the Congressional purpose will, pro tanto, be frustrated. While not necessarily so expressed, this must be the rationale behind statements that to approve a settlement without fees would normally be an abuse of discretion. *See Nadeau*, 581 F.2d, ante, at 279; *Jeff D. v. Evans*, 743 F.2d 648, 650–51 (9th Cir.1984); *Shadis v. Beal*, 685 F.2d 824, 828–31 (3rd Cir.1982), *cert. denied* 459 U.S. 970, 103 S.Ct. 300, 74 L.Ed.2d 282; 1976 U.S.Code Cong. & Ad.News at 5912–13. For counsel to insist on a reasonable fee, while, conceivably, in the particular case detrimental to the client's successful settlement, is nevertheless in accordance with the overall purpose of the Act, not an ethical no-no. At least it must justify going to the court, even if that incurs some risk to the settlement.[3] While the

---

not, for the reasons set forth herein, commend itself. Nor are we at all happy with the Housing Authority's filing a motion to have HUD's brief considered as its joint brief, and then exploding with pages when plaintiff pointed out that HUD's brief conceded the correctness of plaintiff's substantive claim.

**2.** Substantial relief through a consent decree calls for fee. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980).

**3.** Our remark in *White v. New Hampshire Department of Employment Security*, 629 F.2d 697, 705 (1st Cir.1980) *rev'd on other gr'ds*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) that "parties may … decide to waive fees altogether" intended no more than purely voluntary conduct.

Act supplies counsel without charge to the plaintiff, this does not mean counsel with an ethical obligation to forego a fee.

It is difficult, however, to disagree with the district court that counsel went about this in exactly the wrong way. Indeed, the more counsel was certain that defendants' wrongful conduct was duress, the more it would have been appropriate to present the issue to the court for resolution rather than, in effect, build upon a misrepresentation. We do not think the account of Laban's requiring Jacob to work a second seven years for Rachel (Genesis, 29) was voicing approval thereof, however proper the custom Laban gave as excuse. Here, the Housing Authority was entirely wrong, but plaintiff's counsel had the opportunity to correct it, rather than commit another wrong. This is, therefore, a "special circumstance" in which a prevailing plaintiff should not recover fees. *See Burke v. Guiney*, 700 F.2d 767, 772–73 (1st Cir. 1983).

Plaintiff's counsel, and the amicii, would have us lay down rules for all cases where parties do, or some do not, wish to negotiate attorney's fees. *See, e.g., Prandini v. National Tea Co.*, 557 F.2d 1015, 1021 (3rd Cir.1977); *Jeff D. v. Evans*, 743 F.2d at 651–52. We do not believe this is a proper occasion to say more than we have already.

Affirmed. Costs to HUD; no other costs.

TORRUELLA, Circuit Judge (concurring).

Although I concur with the result reached by the court, I feel compelled to state separate grounds for so concluding.

A defendant in a civil rights case, as in other actions, is entitled to know, *at the time of settlement,* the full implications of that settlement including the total out of pocket cost.

As stated by the Supreme Court in *White v. New Hampshire Dept. of Empl. Sec.*, 455 U.S. 445, 453 n. 15, 102 S.Ct. 1162, 1167 n. 15, 71 L.Ed.2d 325 (1982), "In consider-

ing whether to enter a negotiated settlement, a defendant may have good reason to demand to know his total liability from both damages and fees. Although such situations may raise difficult ethical issues for a plaintiff's attorney, we are reluctant to hold that no resolution is ever available to ethical counsel."

A settlement package of a civil rights action may consist of one or more of the following items: (1) monetary damages, (2) equitable relief, (3) costs, and (4) attorney's fees. In settling a case for his client, a defendant's counsel does his client a disservice if he settles a case as to one or more of these items, but leaves open the possibility of further recovery or action on any of the remaining ones. Within the bounds of ethics and fair play, an attorney owes a positive duty to his client to reduce his liability and his exposure to recovery, to the limits of the attorney's ability. This applies to all the items as to which judicial relief can be sought. It cannot be questioned but that, in an appropriate case, plaintiffs, including those in a class action, can accept a settlement without any monetary damages being recovered notwithstanding that the suit initially included such a claim, or that the same result cannot be achieved with respect to equitable relief, or costs. In fact, if constitutional rights can consciously be waived by a defendant in a criminal case,[1] it would be an excess in paternalism to conclude that parties to a civil dispute cannot do likewise.

This court in *White v. New Hampshire Dept. of Employment Sec.*, 629 F.2d 697, 705 (1st Cir.1980), reversed on other grounds, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1981), stated:

"... We of course do not suggest that an attorney in the course of settlement negotiation need, or in every case properly may, hold out, against his client's best interest, for a specific award to be included in the correct decree. If agreement as to fees is not easily accomplished, the parties may provide for submission of

---

1. *See, e.g., Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

the entire question of fees to the court; *further, they may, of course, decide to waive fees altogether ..."*[2]

With due respect to the opinion of the court in the present case, the fact that attorney's fees are authorized in appropriate cases by virtue of Congressional enactment of Section 1988 does not prevent conscious waiver of said fees any more than does the conscious waiver of monetary damages or equitable relief, which also exist by virtue of statute (*e.g.* 42 U.S.C. 1983), and which, after all, are the *raison d'etre* of the Civil Rights Act, not the attorney's fees provisions, which are the product of a latter-day vision.

Last, we should point to the overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved.[3] In these days of crowded court calendars, complex disputes, and tardy results, there can be no doubt but that the voluntary resolution of litigation through settlement, constitutes the best quality of justice, and the highest service, that counsel can perform in the interest of his client and the administration of the judicial system. The removal of attorney's fees from the arena of voluntary and ethical negotiation in civil rights cases would present an unnecessary discouragement to non-litigious disposition of these controversies.

Because we perceive no principled reason for such a result we feel compelled to clarify our views as herein stated.

---

**2.** Emphasis supplied.

**3.** *Cotton v. Hinton,* 559 F.2d 1326 (5th Cir.1977); *Airline Stewards and Stewardesses Ass'n, Local*

*550 v. TWA, Inc.,* 630 F.2d 1164 (7th Cir.1980), 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1980).