**Betty J. ASHLEY, Appellant**

v.

**ATLANTIC RICHFIELD COMPANY.**

No. 85–1310.

United States Court of Appeals, Third Circuit.

Argued Feb. 10, 1986.

Decided June 30, 1986.

As Amended July 11, 1986.

Steven M. Kramer (argued), Philadelphia, Pa., for appellant.

Jess Womack (argued), Atlantic Richfield Co., Philadelphia, Pa., for appellee.

Before HIGGINBOTHAM and STAPLETON, Circuit Judges, and TEITELBAUM, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This appeal arises from the second order of the district court denying appellant's application for attorney's fees under the Civil Rights Attorneys' Fees Award Act, 42 U.S.C. § 1988, after settlement on the merits of her claim of employment discrimination on the basis of race. For the reasons set forth below we will reverse and remand to the district court for proceedings consistent with this opinion.

### I.

Betty J. Ashley was employed by Atlantic Richfield Company ("Arco") from August 2, 1976 to March 2, 1983, at which time she was discharged from her position as the Senior Secretary for Arco. Following her discharge, appellant initiated an action pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 alleging that her termination was racially motivated. After a series of negotiations, the parties agreed to settle their dispute. Accordingly, the district court entered an order on September 24, 1984 that dismissed the action with prejudice, pursuant to agreement of counsel without costs except as provided by Local Rule 42(d).

Subsequently, counsel for Arco prepared a proposed general release and settlement agreement and submitted it to Ashley's attorney, Steven M. Kramer. Kramer refused to endorse the document, specifically objecting to language releasing Arco from liability for attorney's fees. Eventually, on October 24, 1984, a revised document was signed by the parties. The agreement provided that Arco make payment to Ashley in the sum of $7,500.00. In addition, Ashley received non-monetary relief consisting of Arco's agreement to seal Ashley's employment record for ten years and to inform prospective employers that she was "qualified" for the work she had performed. The revised settlement and release agreement was silent on the issue of attorney's fees.

Approximately one month after the settlement and release had been signed appellant's attorney filed an application for counsel fees and costs. The fee application was vehemently opposed by appellee principally on the ground that Arco considered their agreement to pay Ashley $7,500 a "nuisance settlement." As such, Arco argued that it was unwilling to pay any more and would rather proceed to trial than bear the costs of appellant's attorney's fees. Thereafter, the district court entered an order and opinion denying appellant's application on the ground that plaintiff was not the prevailing party because she had obtained only 23% of her potential back pay recovery and she had not 'essentially succeeded' on her claims for non-monetary re-

* Honorable Hubert I. Teitelbaum, United States District Court for the Western District of Pennsylvania, sitting by designation.

lief. App. at A–215. Ashley responded with a timely motion for reconsideration in which she informed the court that, having discharged her statutory duty to mitigate damages by obtaining alternative employment, she had actually recovered over 50% of the potential back pay award. Ashley further contested the district court's finding that the non-monetary relief received was insubstantial and did not entitle her to an award of attorney's fees. In a brief memorandum opinion the district court again rejected Ashley's claims, restating its prior position with regard to Ashley's non-monetary claims, and holding that notwithstanding Ashley's asserted 50% back pay recovery, "she is still not the prevailing party" because Arco "considered the $7,500 a nuisance settlement since it would have at least cost that amount to defend the case." App. at A–228. Accordingly, the district court affirmed its prior judgment and entered a second order denying appellant's requested fees and costs. This appeal followed.

We consider three issues. First, whether the settlement between the parties was a "nuisance settlement" so that appellant did not prevail. Second, whether, assuming *arguendo* that appellant did prevail, she has waived her right to an award of attorney's fees. And, finally, whether the agreement signed by the plaintiff releasing defendant of all costs encompasses attorney's fees.

## II.

### Nuisance Settlement

 Pursuant to the Civil Rights Attorneys' Fees Awards Act of 1976 ("section 1988"),[1] a plaintiff who prevails in a civil rights action is "ordinarily [entitled to] recover an attorney's fee unless special circumstances would render such an award

unjust." *See Newman v. Piggie Park Enters,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam), *quoted in* S.Rep. No. 1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S. Code Cong. & Ad. News 5908, 5912. "The standard used in this circuit for determining a plaintiff's prevailing party status is whether plaintiff achieved 'some of the benefit sought' by the party bringing the suit." *NAACP v. Wilmington Medical Center, Inc.,* 689 F.2d 1161, 1167 (3d Cir.1982), *cert. denied,* 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983); *see also Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 910–12 (3d Cir.1985) (reaffirming the *Wilmington Medical Center* standard in light of the United States Supreme Court's decision in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Moreover, in order to be deemed as having prevailed, plaintiffs need not obtain relief "identical to the relief they specifically demanded, as long as the relief obtained is of the same general type." *Institutionalized Juveniles,* 758 F.2d at 912. Plaintiff need only demonstrate that she obtained some of the benefit sought and that the relief obtained was causally connected to the prosecution of the complaint. *See Wilmington Medical Center,* 689 F.2d at 1171. That a plaintiff's claim terminates in an out-of-court settlement or consent decree does not preclude prevailing party status. *See Institutionalized Juveniles,* 758 F.2d at 911–12 (citing *Doe v. Busbee,* 684 F.2d 1375 (11th Cir.1982)). Thus, in applying the test we first "compare the relief sought with that actually obtained, ... [and] the fact that relief was obtained by way of settlement is only a factor to be taken into account in deciding the second step required by the case law in this circuit; the causal connection between the relief obtained and the lawsuit."[2] *Disabled In*

---

1. 42 U.S.C. § 1988 (1982) provides in pertinent part:

 In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, ... or title VI of the Civil Rights Act of 1964, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

2. In the settlement context "[a] totally frivolous lawsuit which results in the defendant doing no more than it was already committed to do will never satisfy that second step. A lawsuit that

*Action of Pennsylvania v. Pierce,* 789 F.2d 1016, 1019–20 (3d Cir.1986). Finally, the fact that plaintiff prevailed through settlement does not extinguish or attenuate her claim for attorney's fees. As noted in the Supreme Court's seminal opinion, *Maher v. Gagne,* 448 U.S. 122, 131, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980), "[n]othing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated."

### A. Monetary Relief

■ In the case *sub judice,* Ashley sought relief in the form of a judgment in her favor, compensatory and punitive damages, counsel fees and costs, and such other relief as the court deemed just.[3] *See* App. at A–216. Guided by the principles enunciated above, we turn to consider the monetary relief obtained by Mrs. Ashley to determine whether such relief—albeit obtained via settlement—supports a determi-

nation of prevailing party status. Absent special circumstances, such a determination would entitle Ashley to an award of attorney's fees under § 1988.

Ashley received a total of $7,500 from Arco in settlement of her claim. The district court, however, refused to award attorney's fees on the basis of Ashley's monetary recovery. Indeed, the court declined to make a finding under § 1988 whether Ashley was the prevailing party on any of her claims for monetary relief,[4] noting instead that defendant Arco considered the resolution of Ashley's claims as a nuisance settlement. The assertion of a purported nuisance settlement, however, does not circumvent application of the Civil Rights Attorneys' Fees Act.

In analyzing Arco's "nuisance settlement"[5] argument, it is helpful to turn to some of the few reported cases in which the concept has been discussed.[6] In *Parker v. Matthews,* 411 F.Supp. 1059, 1064 (D.D.C.1976), *aff'd sub nom. Parker v. Califano,* 561 F.2d 320 (D.C.Cir.1977),[7] the

---

has sufficient merit to move the defendant to do more than it was already committed to do will satisfy that step." *Disabled In Action,* 789 F.2d at 1019–20; *cf. Harrington v. DeVito,* 656 F.2d 264, 266–67 (7th Cir.1981) (to satisfy the causal connection prong "the defendant must not have acted wholly gratuitously, i.e., the plaintiffs' claims, if pressed, cannot have been frivolous, unreasonable, or groundless.").

3. During settlement negotiations Ashley presented a settlement demand of $75,000. We note in passing that we do not "adopt what is often a casually arrived at *ad damnum* figure as the 'benchmark' in [our] determination of whether Plaintiff is the prevailing party." *Gillespie v. Brewer,* 602 F.Supp. 218, 223 (N.D.W.Va.1985); *see also, Hamilton v. Bruce,* 552 F.Supp. 649, 650 (W.D.Va.1982) (great disparity between sums set out in the *ad damnum* clause and amount of settlement recovery does not preclude prevailing party status).

4. In the first order rejecting Ashley's motion for attorney's fees, applying the standards set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the district court found that Ashley's 23% monetary recovery did not constitute the appropriate relief contemplated by *Hensley* to entitle plaintiff to attorney's fees. App. at A–215—A–217. However, in response to plaintiff's allegation that she had, in fact, obtained over 50% of her potential monetary recovery, the district court failed to consid-

er either the standard criteria articulated in *Hensley* or the precise test employed in this Circuit, *see Institutionalized Juveniles,* 758 F.2d at 910–911, in rejecting Ashley's eligibility for a fee award.

5. "Nuisance Settlement" is a nebulous concept the parameters of which have not yet been defined in the extant case law. We make no attempt at definition here as we find that the concept may be asserted only as a "special circumstance" and thus assessed on a case-by-case basis. *See* discussion *infra* at n. 9.

6. *See also Gram v. Bank of Louisiana,* 691 F.2d 728, 730 (5th Cir.1982) (dictum) ("[N]uisance settlements should not give rise to fee awards"): *Gillespie v. Brewer,* 602 F.Supp. 218, 222 & n. 4 (N.D.W.Va.1985) (note cases cited at n. 4); *Foster v. Boise-Cascade, Inc.,* 420 F.Supp. 674, 683 (S.D.Tex.1976) (quoting *Parker v. Matthews,* 411 F.Supp. 1059 (D.D.C.1976)).

7. *Parker* considered the propriety of a fee award pursuant to 42 U.S.C. § 2000e–5(k), Title VII of the Civil Rights Act of 1964, to a settling civil rights claimant. Section 1988, at issue in this appeal, was patterned upon the fee provisions contained in the Civil Rights Act of 1964. *See Hanrahan v. Hampton,* 446 U.S. 754, 758 n. 4, 100 S.Ct. 1987, 1989 n. 4, 64 L.Ed.2d 670 (1980); S.Rep. No. 1011, 94th Cong., 2d Sess. 4, *reprint-*

district court considered whether a party who settled her employment discrimination claim could be a "prevailing party" entitled to attorney's fees. Noting that to hold otherwise would promote full-scale litigation in civil rights cases, the district court issued the caveat that although fee awards should be generally available to plaintiffs who prevail through settlement "attorneys' fees should not be awarded in nuisance settlements." The court continued, however: "Therefore, to avoid an abuse of the attorneys' fees provision, there must be some additional measure employed by the courts to determine whether the plaintiff is in fact the 'successful party.'" The "additional measure" employed by the *Parker* court consisted of a formula "focusing particularly on the necessity for bringing the action and whether the party is the successful party with respect to the central issue—discrimination." 411 F.Supp. at 1064. Thus, in addressing the ultimate inquiry—"whether the plaintiff [w]as in fact the 'successful party',"—the *Parker* court centered its examination on an assessment of the benefit conferred upon the plaintiff, as opposed to the burden borne by the defendant. *Cf. Institutionalized Juveniles*, 758 F.2d at 912 (focus of the prevailing party analysis is on "the relief actually obtained"); *Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir.1979) (focus is on "relief ultimately received by the plaintiff"). Similarly, in *Forrest v. New York City Criminal Justice Agency*, 549 F.Supp. 211 (1982), in considering whether the settlement entered into by the parties was a "nuisance settlement" precluding a finding that plaintiff had prevailed, the district court implicitly refused to forgo the conventional inquiry under § 1988—whether the benefit obtained justifies the conclusion that plaintiff had prevailed. Finding that due to plaintiff's apparent mitigation of damages, the

negotiated settlement amounted to approximately one-half of the relief requested, the district court held that the plaintiff had in fact prevailed and, accordingly, granted plaintiff's motion for an award of attorney's fees.

*Chicano Police Officer's Association v. Stover*, 624 F.2d 127 (1980), addressed arguments in opposition to a fee award similar to those adopted by the district court and urged upon this court in the instant appeal.[8] In *Stover*, the defendants argued, *inter alia*, that "the sum paid was about what a legal defense would have cost it and was paid only to end a lengthy and disruptive lawsuit, not as compensation on the merits," 624 F.2d at 130, and therefore, the plaintiff could not be deemed to have prevailed. The Tenth Circuit rejoined, and we concur, that such a view of what constitutes a prevailing party is too narrow.

To fully appreciate the intended scope of the prevailing party analysis, the policy objectives that inspired the enactment of § 1988 must be considered. "In enacting § 1988, Congress rejected the traditional assumption that private choices whether to litigate, compromise, or forgo a potential claim will yield a socially desirable level of enforcement as far as the enumerated civil rights statutes are concerned." *Hensley*, 461 U.S. at 444, 103 S.Ct. at 1945. (Brennan, J. concurring in part, dissenting in part). Rather, Congress recognized that "[i]n many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer," and concluded that "[i]f our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases." S.Rep. No. 1011, 94th Cong., 2d Sess. 2, 6, *reprinted in* 1976 U.S. Code Cong. & Ad.News 5908,

---

*ed in* 1976 U.S.Code Cong. & Ad.News 5908, 5912.

**8.** Arco argues that "as to the economic recovery, this was no more than a nuisance settlement entered into by the defendant to rid itself of a case of minimal exposure." Brief on Behalf of Defendant-Appellee at 24. As noted *supra,* the

district court, in accordance with defendant's theory, held that Ashley was "not the prevailing party because as Arco argued, it considered the $7,500 a nuisance settlement since it would have at least cost that amount to defend the case." App. at A–228.

5910, 5913. Thus, in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court observed that the prevailing party standard is a "generous formulation" that entitles even those civil rights plaintiffs who obtain only partial relief to an award of attorney's fees. *See Hensley*, 461 U.S. at 433, 436–37, 103 S.Ct. at 1939, 1941; *cf. Institutionalized Juveniles*, 758 F.2d at 911 n. 25 ("[A] party can be eligible for attorneys' fees, albeit at a reduced amount, even though that party ... had obtained only 'minor relief' "); 2 A. Larson, Employment Discrimination § 58.15(c) (1985) ("The fact that plaintiff prevails on some issues but not others may affect the amount of the award but does not mean that plaintiff is not 'prevailing.' "); *accord Inmates of Allegheny County Jail v. Pierce*, 716 F.2d 177 (3d Cir.1983), *modifying Hughes v. Repko*, 578 F.2d 483 (3d Cir.1978). Indeed, *Hensley* teaches that even "minor" relief may justify an appropriately reduced award. 461 U.S. at 439 n. 14, 103 S.Ct. at 1942 n. 14. The important factor in establishing entitlement to a fee award is that plaintiffs'

rights are vindicated, and "if a settlement provides some benefit to plaintiffs or some vindication of their rights, then the congressional intent to encourage private enforcement of civil rights ... will be furthered by the awarding of fees." *Stover*, 624 F.2d at 131. In sum, when a plaintiff obtains "some of the benefit sought" through a settlement, she is a prevailing party and will be entitled to a fee award unless the court finds it to be an exceptional case. Once it is determined that a plaintiff has in fact prevailed, the *Hensley* analysis which provides that the fee award bear some relation to the relief obtained, 461 U.S. at 440, 103 S.Ct. at 1943, will normally do justice to a defendant who is settling primarily to avoid litigation expense. Therefore, we hold that, consistent with the case law in this circuit and the policy objectives of § 1988, the threshold determination of prevailing party status that serves to entitle a plaintiff to a reasonable award of attorney's fees may not be jettisoned by the assertion of a nuisance settlement.[9] Section 1988 *requires* a pre-

---

9. In *Gillespie v. Brewer*, 602 F.Supp. 218, 222 (N.D.W.Va.1985), the district court held that "[t]he determination of whether a plaintiff is the prevailing party cannot be made by attempting to affix such an ambiguous label as 'nuisance settlement' to the final compromise reached by the litigants." In our view, nuisance settlement is not a concept that is helpful in fee award analysis. Consequently, we decline to fashion a rule specifically directed to "nuisance settlements." We note that § 1988 neither condones nor promotes extorted settlements from which large sums in attorney's fees may be recovered from frivolous claims. The better analytic approach to such claims as Arco's, however, is to consider such factors under the judicially created exception to the presumption of fee awards to prevailing plaintiffs. To hold otherwise would permit the wholesale preemption of fee awards to plaintiffs who have in fact prevailed on their claims.

Physical, psychological and monetary benefits inure to both sides of a settlement agreement. Indeed, the avoidance of litigation expense and delay is precisely what settlement contemplates. To embroil the district court at the initial stage of the entitlement inquiry in mechanical assessments of the relative benefits to each settlement participant would undermine § 1988 and unnecessarily complicate the prevailing party analysis. *See, e.g., Gillespie*, 602 F.Supp. at 222. We recognize, however, that there may be settle-

ments in which the plaintiff's claim clearly appears to be legally or factually non-meritorious and, accordingly, in which it appears that the "some benefit obtained" has been conferred by the defendant *solely* as a means of saving litigation expense. Courts may appropriately declare these cases as ones involving "special circumstances" and deny an award. But even in these cases, the focus should be on the lack of merit in the plaintiff's case, not on the defendant's motivation. Furthermore, under these circumstances the court should explain why the *Hensley* analysis will produce an unjust result. Thus, while a "nuisance settlement" theory may be asserted as a potential "special circumstance" rendering a fee award unjust, *see Piggie Park*, 309 U.S. at 402, 88 S.Ct. at 966, it may not routinely operate to defeat plaintiff's prevailing party status.

Consequently, we hold in the instant appeal that Arco's nuisance settlement contention cannot obviate the requisite inquiry under § 1988 whether the fee petitioner prevailed in her underlying action. Moreover, our review of this record leaves us unconvinced that Arco's purported nuisance settlement justifies deviation from the general rule awarding fees to the prevailing party. By its own concession, Arco was informed by the district court that "the case was worth something, and some level of risk warranted settlement," *see* Brief on Behalf of De-

liminary determination whether plaintiff prevailed. *Cf. White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 451–52, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1981) ("[T]he court's decision of entitlement to fees will ... require an inquiry separate from the decision on the merits— an inquiry that cannot even commence until one party has 'prevailed.'"). Failure to make that determination saps the statute of its content and thwarts its application.

■ In the instant appeal, the district court failed to assess the benefit conferred upon Mrs. Ashley to ascertain whether she had prevailed. If, however, as Ashley contends, she duly mitigated her damages by securing alternative employment and thereby obtained a settlement in excess of 50% of her potential recovery, she would qualify as a prevailing party. Although not the sole basis upon which a finding of prevailing party status may lie, Ashley's contention, if true, would entitle her to an award of reasonable attorney's fees under the standard applied in this circuit. Thus, to the extent that the district court considered the assertion of a nuisance settlement as dispositive of the issue whether plaintiff prevailed in the underlying settlement, it applied the wrong legal standard and circumvented compliance with the congressional directive of § 1988. We therefore remand for a determination consistent with the standard set forth above whether plaintiff prevailed on her claim for back pay.

### B. Non-monetary Relief

■ Appellant's requests for non-monetary relief consisted of (1) the removal of certain documents from her employee file, (2) a statement that she was "competent" for the work she performed, and (3) an assurance from Arco that it would not issue negative reports on her work performance. The relief ultimately obtained by Ashley was an agreement from Arco to seal her employee file for a period of ten years and to issue a statement to prospective employers that Ashley was "qualified" to do the work she performed.[10] Arco further agreed that if for reasons specified in the agreement, the review of Ashley's file became necessary, notification would be issued to her by Arco's legal division. The district court denied appellant's fee petition holding that she had not vindicated any of her rights because the "defendant merely followed its usual procedures with respect

fendant-Appellees at 11, thereby attenuating its claim that it was merely concerned with basic litigation expenses. Thus, the allegation that Arco sacrificed the minimum amount that it would have cost to defend the action in order to save itself from potentially high litigation expenses without more does not constitute a special circumstance that would render a fee award to Ashley, if she has prevailed, unjust. *Cf. Robinson v. Kimbrough*, 652 F.2d 458, 467 (5th Cir.1981) ("The fact that a defendant has its own attorneys' fees to pay is not such a 'special circumstance' sufficient to render an award unjust."). Indeed, as we noted above, the focus of the special circumstances inquiry is on the merit of the plaintiff's claim. The defendant's motivations and strategy choices are not dispositive. The "special circumstances" exception is an extremely limited one that is applied only in unusual circumstances and then only upon a strong showing by the party asserting it. *See Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board*, 643 F.2d 1034, 1041 (5th Cir.1981).

**10.** The settlement agreement provides in pertinent part:

6. The parties further agree that ASHLEY's personnel file and related documents shall be sealed from routine business use for a period of ten (10) years. Provided, however, that it may be opened if ARCO is served with legal process which requires disclosure, or if an unforseen [sic] business use necessitates examination of the file. However, before it can be opened due to an unforseen [sic] business use, prior approval must first be obtained from the legal department which shall provide notification to counsel for plaintiff....
7. The Parties further agree that should ARCO be asked to provide either a written or oral recommendation to a person inquiring about ASHLEY for prospective employment, the recommendation provided by ARCO shall be in the form set forth in Exhibit II. except that ARCO may provide the information requested of it on prospective Employer's own form where such prospective employer has sent such forms to ARCO, however, under no circumstances can the information provided be less favorable than that set forth in attachment No. II.
App. at A–19—A–20.

to all of plaintiff's non-monetary requests." App. at A–228. We now reverse.

Arco maintains (1) that "company policy prohibits removal of documents from a file," (2) that "a discharged employee's personnel file is as a matter of course sent to storage and never again referred to absent special circumstances," and (3) that "responses to inquiries about former employees are limited to the person's beginning and ending dates of employment, and their final position." Brief on Behalf of Defendant-Appellee at 24–25. Although there is no record evidence to either substantiate or invalidate Arco's characterization of its company policy, even if true, it does not sustain the conclusion that Ashley did not prevail. As this court recently noted, plaintiffs need not obtain relief "identical to the relief they specifically demanded, as long as the relief obtained is of the same general type." *Institutionalized Juveniles*, 758 F.2d at 912. In addition, if a plaintiff is also successful in "mov[ing] the defendant to do more than it was already committed to do," she will be deemed to have prevailed. *Disabled In Action*, 789 F.2d 1020.

We find that the sealing of Ashley's employee file for a period of ten years essentially grants her the type of relief sought in her request for the removal of certain documents from her file. By precluding review of her file altogether, with limited exceptions, Arco provides Ashley with the assurance that the existence of the documents she wished removed will be virtually innocuous. In addition, nothing in the record suggests, and Arco has not averred, that former employees are routinely notified if their files are subject to review. Ashley has secured the right to such notification and, implicitly, a right to contest any proposed review. *See supra* note 10. Similarly, we do not find the distinction between a statement that Ashley was "qualified" as opposed to "competent" to perform the work for which she was hired of such magnitude as to preclude prevailing party status. Although the terms are not synonymous or completely "identical to the relief [Ashley] specifically demanded," they are sufficiently similar so as to constitute

"relief ... of the same general type." *See Institutionalized Juveniles*, 758 F.2d at 912. Finally, Ashley received some assurance that in situations where conventional Arco policy may not apply, Arco would be nevertheless precluded from issuing negative statements. The language of the settlement agreement makes clear that if prospective employers submit their own questionnaires to Arco with respect to Ashley's employment, thereby permitting deviation from standard Arco policy, "under no circumstances can the information provided be less favorable than" the statement that Ashley was qualified to perform her duties. App. at A–20.

As appellees concede, taking its policy characterizations as true, "[e]ach [element of Ashley's non-monetary relief] was a *minor deviation* from [Arco] company policy." Brief on Behalf of Defendant-Appellee at 24 (emphasis added). Ashley obtained some of the benefit sought and moved Arco to do something more than it was committed to do. Hence, Ashley prevailed on her claims for non-monetary relief and is entitled to a fee award. Therefore, we will remand to the district court for computation of a reasonable fee award on Ashley's non-monetary claims.

### III.

#### *Fee Waiver*

Arco argues that even if we accept appellant's position that she prevailed on any or all of her underlying claims, she is nevertheless not entitled to an award of attorney's fees because whatever rights she had were waived when she signed the settlement agreement. Ashley, however, points to the chronology of events surrounding the drafting of the settlement agreement and contends that no waiver of fees occurred. In addition, Ashley argues that this court's decision in *El Club Del Barrio v. United Community Corp.*, 735 F.2d 98 (3d Cir.1984), is controlling and resolves the waiver issue in her favor.

As discussed *supra*, the initial settlement agreement prepared by Arco and submitted

to Kramer, Ashley's counsel, contained language which unambiguously waived Ashley's statutory right to attorney's fees. Kramer objected to the language and refused to sign. Subsequently, a revised agreement deleting all references to attorney's fees was prepared by counsel for Arco. Prior to the execution of the revised agreement, counsel for Arco maintains that in response to the question whether Ashley was seeking attorney's fees, Kramer responded, "I am not taking a position." The agreement was signed nonetheless by Ashley and both counsel without modification. This court recently held, on similar facts, that where a settlement agreement is silent on the issue of attorney's fees "the best rule of law would be one that places the burden [of proving waiver] on the party losing the underlying litigation. If the parties cannot agree on counsel fees and the losing party wishes to foreclose a suit under section 1988 for attorneys fees, it must insist that a stipulation to that effect be placed in the settlement agreement." [11] *El Club Del Barrio*, 735 F.2d at 101. For the reasons set forth below, we hold that the principle enunciated in *El Club Del Barrio* obtains in the instant appeal, and consequently, appellant has not waived her rights to an award of attorney's fees pursuant to § 1988.

In *El Club Del Barrio* a plaintiff who had prevailed in the underlying settlement instituted an application for an award of attorney's fees pursuant to § 1988. During the course of negotiations plaintiff had drafted an agreement expressly reserving plaintiff's right to seek attorney's fees notwithstanding settlement on the merits. Defendants objected to the reservation and ultimately, a revised agreement, silent on the issue of attorney's fees, was endorsed by both parties. Defendants opposed the subsequent fee application arguing that the silence of the settlement agreement on the issue of attorney's fees together with plaintiff's conduct during the negotiations evinced a waiver of plaintiff's right to a fee award. Both parties in *El Club Del Barrio*—as in the case *sub judice* [12]—invoked this court's ruling in *Prandini v. National Tea Co.*, 557 F.2d 1015 (3d Cir.1977), which disapproved the simultaneous negotiation of settlements on the merits and attorney's fees, as a partial explanation for their conduct. After oral argument in the instant appeal, however, the United States Supreme Court issued its opinion in *Evans v. Jeff D.*, [13] —— U.S. ——, 106 S.Ct. 1531

---

**11.** Arco's rejection of the applicability of *El Club Del Barrio* on the ground that Ashley was not the prevailing party is of no moment since we have determined *supra* that, at least on her claims for non-monetary relief, Ashley did in fact prevail.

**12.** Both Ashley and Arco raise the now familiar criticism of *Prandini*: that its bar on simultaneous negotiation results in the reluctance of both parties to settle. Ashley's objection to the effects of *Prandini* is essentially twofold: First, Ashley argues that in the settlement context, *Prandini* coupled with deference to the "nuisance settlement" concept in lieu of a determination of prevailing party status, *see* discussion *supra* at n. 6, unfairly prejudices plaintiffs who on the one hand are prohibited from negotiating a fee and who on the other hand are faced with the likelihood of receiving little or no compensation even where they succeed in securing substantial relief. *See* Brief for Appellant at 7. Second, Ashley implicitly argues that where plaintiffs sign a settlement agreement which is silent on the issue of attorney's fees, equating silence as waiver unduly penalizes plaintiff for adhering to *Prandini's* prohibition. *See* Reply

Brief of Appellant at 3 (citing *El Club Del Barrio*). Arco seemingly rejects *Prandini's* applicability on the grounds that the settlement was a nuisance settlement and that there were other options, short of discussion and negotiation, available to the plaintiff. *See* Brief on Behalf of Defendant-Appellee at 28–30. Arco also, however, appears to suggest reliance on *Prandini* in its contention that it believed it inappropriate to inquire into Ashley's fee arrangement during the course of settlement. *Id.* at 32.

**13.** *Evans* involved a class action filed on behalf of Idaho children suffering from emotional and mental handicaps against the Governor of Idaho and other public officials responsible for their education and treatment. A prompt settlement was reached between the parties with regard to plaintiffs' claims relating to educational services. Settlement on the treatment claims, however, was not achieved until one week before trial was scheduled to begin, and after discovery had been completed. The settlement agreement prepared by the defendants granted substantial structural relief on the merits but was conditioned upon plaintiffs' waiver of any claim to

(1986), in which the Court was unanimous in concluding "that the Fees Act [§ 1988] should not be interpreted to prohibit all simultaneous negotiations of a defendant's liability on the merits and his liability for his opponent's attorney's fees." [14] 106 S.Ct. at 1543 n. 30. To the extent that *Prandini* constitutes an absolute ban on simultaneous fee negotiation, then, it has been overruled. That *Prandini* has been overruled, however, does not vitiate the vitality of *El Club Del Barrio*. The rule enunciated in *El Club Del Barrio* was announced *in spite of Prandini*, not on the basis of it.[15] Moreover, consistent with the spirit of *Evans*, the requirement that nego-

tiated fee waivers be expressly contained in the settlement agreement will result in informed settlements [16]—prejudicing neither plaintiff nor defendant—and effectively extinguish most post-settlement petitions for fee awards. Thus, *El Club Del Barrio* is neither inconsistent nor incompatible with the reasoning of *Evans*. While *Evans* decides the propriety of fee waivers, *El Club Del Barrio* merely determines the form they must take.

■ Of course, where plaintiffs fail to prevail under the standard applied in this circuit, no entitlement to attorney's fees attaches. Where the plaintiff does so pre-

fees and costs. Counsel for the plaintiffs', Charles Johnson, was employed by the Idaho Legal Aid Society, Inc., and had been instructed to reject any settlement offer conditioned upon a waiver of fees. Compelled by his ethical obligation to his clients, however, Johnson nevertheless signed the settlement agreement. The agreement provided in pertinent part: 'Plaintiffs and defendants shall each bear their own costs and attorney's fees thus far incurred, if so approved by the Court.' *Evans,* 106 S.Ct. at 2535 n. 5.

After signing the agreement, Johnson urged the district court to approve only the settlement of plaintiffs' substantive claims, to reject the fee waiver, and to permit plaintiffs to petition for costs and fees. Johnson argued that defendants' offer "had exploited his ethical duty to his clients—that he was 'forced,' by an offer giving his clients 'the best result [they] could have gotten....,' to waive his attorney's fees." *Id.* at 1535. The district court rejected the ethical argument and approved the settlement in its entirety. On appeal, the Ninth Circuit reversed. Focusing on the nature of the suit, i.e., a class action, and the policy underlying fee awards to private attorneys general, the circuit panel concluded: "The historical background of both Rule 23 and section 1988, as well as our experience since their enactment, compel the conclusion that a stipulated waiver of all attorney's fees obtained solely as a condition for obtaining relief for the class should not be accepted by the [district] court." *Jeff D. v. Evans,* 743 F.2d 648, 652 (9th Cir.1984). The Supreme Court reversed. *Evans,* —— U.S. ——, 106 S.Ct. 1531 (1986).

**14.** Although the Court was unanimous on the issue of the permissibility of simultaneous fee *negotiations* under § 1988, on the issue of the permissibility of fee *waivers,* the Court divided 6–3. *See Evans,* 106 S.Ct. 1531. The majority rejected outright the contention that settlements

conditioned on fee waivers presented counsel with 'ethical dilemma[s].' Far from being caught between an ethical Scylla and Charybdis, the Court observed that attorneys have "no *ethical* obligation to seek a statutory fee award." Rather, counsel's sole ethical obligation "was to serve his clients loyally and competently." *Evans,* 106 S.Ct. at 1537–38 (emphasis in original). In dissent, Justice Brennan, joined by Justices Marshall and Blackmun concluded that "[b]ecause making it more difficult for civil rights plaintiffs to obtain legal assistance is precisely the opposite of what Congress sought to achieve by enacting the Fees Act, fee waivers should be prohibited." *Id.* at 1554.

**15.** *See El Club Del Barrio,* 735 F.2d at 101 n. 3 ("*Prandini*'s side effect of deterring settlements is not altered by the consequences courts attach in suits under section 1988 to the earlier failure to have explicitly resolved attorneys fees issues. The rule we announce today ... determines only who will bear the costs of *Prandini,* i.e. will the plaintiff be deemed to have waived his statutory right to reasonable attorneys fees because *Prandini* barred him from negotiating about them, or will defendants be unable to secure a waiver or settlement of attorneys fees because *Prandini* barred the plaintiff from discussing them and because the court will not recognize a waiver under such circumstances?").

**16.** Unlike counsel for Arco, we do not think that "adversaries ... are expected, ... encouraged and perhaps obligated to use, [albeit] within certain permissible limits, deception, guile, and concealment to obtain the best bargain for [their] clients." Brief on Behalf of Defendant-Appellee at 18. With the ban on simultaneous negotiations of substantive settlements and attorney's fees in this circuit now lifted, the express waiver rule will facilitate the finality of negotiated settlements. Thus, the measure of "good lawyering" should be rightfully reflected

vail, however, in the absence of an express waiver, she will be deemed to have retained her statutory right to an award of reasonable attorney's fees. Therefore, where a defendant seeks to settle its total liability on a claim, it shall be incumbent upon the defendant to secure an express waiver of attorney's fees.[17] Silence will not suffice.[18]

Although Arco offers decisions from two other circuits as support for the silence equals waiver rule, *see Brown v. General Motors Corp., Chevrolet Div.,* 722 F.2d 1009, 1012 (2d Cir.1983) (stipulation that action be dismissed 'without costs to any party' is intended to settle all claims, including a claim for attorney's fees); *Jennings v. Metropolitan Gov't of Nashville,* 715 F.2d 1111, 1114 (6th Cir.1983) (silence of the agreement notwithstanding, the record supported "the single inference that the parties agreed to settle their dispute in full [including the issue of attorney's fees]"),[19] we think the congressional policy of § 1988 will be enhanced by adherence to the contrary position. As we observed in

*El Club Del Barrio,* the " 'silence equals waiver' rule ... pays inadequate attention to the presumption established in *Hensley* and *Piggie Park* in favor of [fee awards to] prevailing civil rights plaintiffs." 735 F.2d at 100. Our approach avoids that result and thus furthers the nationally legislated, preferred policy of Congress.[20] While statutory rights may be voluntarily bargained away by the party so entitled, they may not be assumed away by the party opposing their enforcement. With or without the *Prandini* prohibition, it is not unreasonable to expect defendants to presume that where a civil rights plaintiff satisfies the statutory requirements of § 1988, she is at liberty to invoke the provisions of the statute so as to entitle her to an award of reasonable attorney's fees. Indeed, the presumption inheres in the existence of the statute itself. Nor do we find Ashley's counsel's refusal to take a position on the fee issue sufficiently "misleading" to overcome that presumption.[21]

within the four corners of the settlement agreement.

17. *Evans* implicitly acknowledged that there may be circumstances under which fee waivers will be inappropriate and it left open the question whether a district court must refuse to approve a fee waiver where "the defendant had 'no realistic defense on the merits,' ... or if the waiver was part of a 'vindictive effort ... to teach counsel that they had better not bring such cases," or where the "situation presents a grossly unfair choice to the plaintiff and his/her counsel, and permitting such offers to be made would seriously undermine the purpose of fee shifting provisions." 106 S.Ct. at 1544 & n. 32. Our requirement that fee waivers be explicit is not, of course, meant to encourage the type of egregious conduct the court has admonished against in *Evans.*

18. To be sure, silence cuts both ways. We see no reason why *defendants'* silence with regard to their potential fee liability should not be construed as consent to plaintiff's right to pursue an award of reasonable attorney's fees if plaintiff ultimately prevails.

19. *But see, Johnston v. Jago,* 691 F.2d 283 (6th Cir.1982) (upholding award of attorney's fees on ground that plaintiff was prevailing party under standard enunciated in *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978), even though settlement obtained in separate administrative proceeding was silent on the issue of attorney's fees).

20. Moreover, the concerns expressed in *Evans* regarding judicially imposed material modifications of proposed settlements, *see* 106 S.Ct. at 1537, augur against an interpretation that engrafts onto an otherwise finalized settlement agreement an *implied* waiver of statutory rights. *Evans* considered and rejected plaintiffs' attempt to nullify the *express* terms of a settlement agreement. *Evans* is thus factually distinguishable from the instant appeal in that there plaintiff's counsel specifically agreed to forgo his claim for fees, whereas here no such agreement was obtained. The *Evans* Court refused to announce a rule of law that would enable plaintiffs to mislead defendants during the course of negotiations and thereafter renege on the express terms of the settlement. *See also Moore v. National Ass'n of Sec. Dealers, Inc.,* 762 F.2d 1093 (D.C.Cir.1985) (same); *Lazar v. Pierce,* 757 F.2d 435 (1st Cir.1985) (same). Equally objectionable, however, is a rule of law which would sanction similarly deceptive conduct on the part of defendants allowing them to deliberately rest on plaintiff's silence and thereafter ascribe an intent to waive thereto.

21. Furthermore, we continue to adhere to our preference against requiring a district court, as a matter of course, to reexamine settlement negotiations "to determine who said what to whom when." *El Club Del Barrio,* 735 F.2d at 100. Even if there were a definable category of circumstances that would justify further inquiry, Arco does not present it here.

■ In the instant appeal, Arco is virtually indistinguishable from defendants against whom fee liability was imposed in *El Club Del Barrio*. Having failed to secure an express waiver of plaintiff's statutory entitlement to attorney's fees—albeit due to a side-effect of *Prandini*—Arco may not, in effect, abrogate congressional intent and extinguish Ashley's claim (to the extent that she has prevailed) to a fee award either because the parties did not discuss attorney's fees or failed to reach an agreement on them. Section 1988 does not require that prevailing plaintiffs affirmatively reserve their rights under the statute as a condition precedent to its enforcement.

## IV.

### Costs

■ Finally, we briefly consider whether the settlement agreement releasing defendant from all costs encompasses a release of attorney's fees. At oral argument Arco argued that the Supreme Court's decision in *Marek v. Chesny*, —— U.S. ——, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), moots the prevailing party question because *Chesny* held that attorney's fees provided by § 1988 are included among taxable costs. While acknowledging that *Chesny* involved an interpretation of Federal Rule of Civil Procedure 68, Arco nevertheless suggests that *Chesny* primarily considers the proper construction of the costs provision of § 1988. From this Arco reasons that the settlement agreement released it from liability for *all* § 1988 costs which include attorney's fees. Arco misreads the Court's decision.

*Chesny* involved the interplay between Rule 68 [22] of the Federal Rules of Civil Procedure and § 1988. Rule 68 is a cost-shifting mechanism which provides that a prevailing plaintiff must pay the defend-

ant's "costs" if she rejects a settlement offer which exceeds the amount recovered after trial. Under § 1988, however, a prevailing plaintiff is ordinarily entitled to a reasonable fee award. *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam). Thus, the issue in *Chesny* involved not the definition of costs under § 1988, but rather, the scope of the costs provision of Rule 68. In determining "whether attorney's fees incurred by a plaintiff subsequent to an offer of settlement under ... [Rule 68] must be paid by the defendant under ... § 1988, when the plaintiff recovers a judgment less than the offer," 105 S.Ct. at 3014, the Court held that "where the underlying statute defines 'costs' to include attorney's fees, ... such fees are to be included as costs for purposes of Rule 68." *Id.* at 3017. Because § 1988 provides that attorney's fees may be recovered "as part of the costs," *see supra* note 1, a prevailing plaintiff who recovers less than a defendant's Rule 68 offer must bear her own post-offer costs, including attorney's fees. The intended effect of *Chesny* is to deny to prevailing plaintiffs fee awards for post-offer services that do not produce any additional monetary benefit for the plaintiff. *Id.* at 3018.

Arco's argument seeking to extend *Chesny* to the instant appeal fails for several reasons. First, Rule 68 requires a formal submission to the court of the offer and acceptance after which *judgment* will be entered against the defendant. Here there was no formal submission, and more important, judgment was not entered against Arco. Second, a Rule 68 offer *must* include an offer to pay all costs accrued at the time of the offer. In *Chesny* the court noted that "it is immaterial whether the offer recites that costs are included, whether it specifies the amount the defendant is

---

**22.** Rule 68 provides in pertinent part:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. [If

the offer is rejected and] ... the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Fed.R.Civ.P. 68.

allowing for costs, or for that matter, whether it refers to costs at all. As long as the offer does not implicitly or explicitly provide that the judgment *not* include costs, a timely offer will be valid." *Chesny*, 105 S.Ct. at 3016. The settlement agreement in the instant appeal expressly released defendant from all costs.[23] Finally, and more fundamentally, Rule 68 by its own terms applies to release defendants from costs where an offer is *rejected.* Ashley and Arco entered into a negotiated settlement that was *accepted* by both parties. *Chesny* neither mandates nor encourages the exclusion of attorney's fee liability in all civil rights settlement agreements. To read *Chesny* any other way would indeed undercut the Court's approval of simultaneous fee negotiation in *Evans.*

In sum, *Chesny* is simply inapplicable to this appeal. The Supreme Court did not purport to establish a uniform definition of costs that is coterminous with attorney's fees.[24] *Chesny* governs actions in which Rule 68 is invoked. There is no formal Rule 68 offer in the instant proceeding. Nor are the policy objectives undergirding Rule 68 remotely implicated by this appeal.[25] We do not consider here the construction of a costs provision of a statute or a rule. Rather, we seek to determine the content of costs as employed in a negotiated settlement agreement. We conclude that it is clear on this record that the parties did not consider "costs" to be inclusive of attorney's fees.[26] The original draft agreement included language referring to attorney's fees. Upon objection from Ashley's counsel, the parties agreed to delete that language while that referring to costs was retained. Thus, the agreement signed by the parties did not include a release of defendant's potential liability for attorney's fees.

The agreement does provide, however, for a general release of Arco's liability for Ashley's traditional costs. The district court dismissed the action without costs to either party except as provided by Local Rule 42(d)[27] and subsequently refused to grant an award of costs to Ashley. Appellants have advanced no argument why that decision should be disturbed. Accordingly, we will affirm the district court's denial of costs to Ashley.

## V.

### *Conclusion*

We hold that the district court failed to make the requisite finding under § 1988

---

**23.** Indeed, if Arco's argument were to prevail liability for the very fees it seeks to avoid would necessarily be a part of the agreement.

**24.** Indeed, under *Chesny* Rule 68 "costs" are subject to varying definitions depending on the underlying statute at issue. *See Chesny*, 105 S.Ct. at 3017; *cf. id.* at 3024–25 (Brennan, J., dissenting) (criticizing the probable effect on settlement incentives under Rule 68 due to "minor variations in the phraseology of the underlying fees-award statutes").

**25.** *Cf. Neal v. Berman*, 576 F.Supp. 1250, 1253 (E.D.Mich.1983) (noting that "[h]ad defendants made a record of a settlement offer that ultimately proved to be higher than the jury verdict, the Court would have concluded that the plaintiff had not 'prevailed' by going to trial, and would have refused to grant plaintiff his attorney's fees for those hours spent by his attorney in trying the case.") Although *Neal* made no reference to Rule 68 it is clear that identical policy concerns underlay the court's decision. In the instant appeal, however, those policy concerns—promoting settlements and discouraging prolonged litigation—are of no moment because the parties settled before trial.

**26.** While we noted our disapproval of examination of the parties' conduct to determine whether rights have been waived, we do not feel that the same considerations apply where the definition of express terms within the agreement are at issue. Thus, it is relevant that language referring to attorney's fees was deleted while that referring to costs was retained.

**27.** Local Rule 42(d) provides:

(d) The Clerk shall not enter an order of dismissal or of satisfaction of judgment until the Clerk's and Marshal's costs have been paid. The Clerk, in cases settled by parties without payment of costs, may have an order on one or more of the parties to pay the costs. Upon failure to pay the costs within ten (10) days, or at such time as the Court may otherwise direct, the Clerk may issue execution for recovery of costs.
*Federal Local Court Rules,* Pennsylvania (E.D.) R. 42(d).

whether appellant prevailed on her monetary claims for relief. We therefore will remand for a determination whether appellant prevailed on her claim for back pay. We will reverse the district court's finding that appellant did not prevail on her nonmonetary claims for relief and, accordingly, remand for a computation of a reasonable fee award on those claims. We will affirm the district court's denial of costs to appellant.