**THE ARC OF NEW JERSEY, INC., a New Jersey non-profit corporation; Mental Health Association in New Jersey, Inc., a New Jersey non-profit corporation; Camden County Unit of the New Jersey Association for Retarded Citizens, Inc., a New Jersey non-profit corporation; J.F., G.F., and R.W., three incompetent adults, by their guardian, the Bureau of Guardianship Services of the New Jersey Division of Developmental Disabilities (David Hearn, Guardianship Worker); and the Mental Health Association in Southwestern New Jersey, Inc., a New Jersey non-profit corporation, Plaintiffs,**

v.

**TOWNSHIP OF VOORHEES, a Municipal Corporation of the State of New Jersey; Township Committee of the Township of Voorhees; and the State of New Jersey, Defendants.[1]**

No. CIV.A. 93–1399.

United States District Court, D. New Jersey.

Nov. 19, 1997.

---

1. The Court notes that plaintiffs' counsel have settled with the State of New Jersey as to fees, and that the Voorhees defendants were dismissed from the case except for purposes of this fee application.

**264**

Community Health Law Project, Susan E. DiMaria, David J. Popiel, East Orange, NJ, for Plaintiffs.

George J. Botcheos, Chartered, George J. Botcheos, Cherry Hill, NJ, Higgins, Long & Bonfiglio, P.A., Peter J. Bonfiglio, III, Laurel Springs, NJ, for Defendants.

## OPINION ON ATTORNEYS' FEES

BROTMAN, District Judge:

### A. Background

The genesis of this dispute occurred when OARC, a subsidiary of the Camden County Unit for the ARC of New Jersey, Inc., a plaintiff herein, obtained a residential property at 6 Chandler Lane in the Township of Voorhees and intended to use that property as a community residence for eight developmentally disabled men. On December 13, 1990 OARC applied for and received a zoning permit from Voorhees which allowed OARC to use the property as a community home. Upon learning of this intended use, various local residents decided that they opposed a group home in their backyard and filed an appeal with the Voorhees Township Zoning Board in an attempt to convince Voorhees to revoke the zoning permit. These residents were initially successful. On April 4, 1991, OARC's permit was revoked. OARC challenged the revocation of their permit by filing an action in lieu of prerogative writ with the Superior Court of New Jersey, Law Division, Camden County. That court ruled in OARC's favor, restoring OARC's zoning permit.

Local residents persisted, however, and urged the Township Committee of the Township of Voorhees ("Committee") to adopt a conditional use ordinance restricting community homes from locating in Voorhees. Again, residents enjoyed initial success. On April 22, 1991, the Committee enacted Article XXX of the Voorhees Code § 131–134, *et seq.* The ordinance required organizations seeking to locate a community residence for the disabled to obtain a conditional use permit from the Committee. The ordinance was adopted pursuant to *N.J.S.A.* 40:55D–66.1, the New Jersey enabling statute.

The first phase of the present litigation commenced with the filing of a Complaint in March of 1993, in which plaintiffs challenged the Voorhees ordinance, naming as defendants the Township of Voorhees and the Township Committee (collectively referred to hereinafter as "the Voorhees defendants") as violative, *inter alia,* of the federal Fair Housing Act (hereinafter "FHA") (Compl., Count. I, at ¶¶ 50–56), the Americans with Disabilities Act ("ADA") (*Id.,* Count. II, at ¶¶ 57–62), § 504 of the Rehabilitation Act of 1973 (*Id.,* Count. III, at ¶¶ 63–69), federal and state equal protection (*Id.,* Count. IV, at 70–73), federal and state due process (*Id.,* Count. V, at 74–79), and the New Jersey Law Against Discrimination (*Id.,* Count. VIII, at 96–103). The initial Complaint, at Counts X, XI, XII, XIII, and XIV, also challenged the validity of *N.J.S.A.* 40:55D–66.1, the enabling statute pursuant to which the Township enacted its conditional use ordinance.

At the first pretrial conference in this matter on June 24, 1993, the Magistrate Judge reviewed the Voorhees ordinance with counsel and indicated that certain sections would not pass constitutional muster. The Voorhees defendants volunteered that certain sections of the ordinance could be repealed. At this conference, plaintiffs also agreed to amend their Complaint to include the State of New Jersey in defense of its zoning enabling statute, *N.J.S.A.* 40:55D–66.1.

The second phase of this litigation's history began with the filing of the Amended Complaint in the late summer months leading up to October 1993. In spite of the Voorhees defendants' assurances that the municipal or-

dinance would be repealed, the ordinance remained in place when the Magistrate Judge set a deadline for dispositive motions of June 28, 1994. On that same date, he conducted a pretrial conference, at which the Voorhees defendants presented a draft revised ordinance eliminating most, but not all, of the ordinance's twenty-six conditional use standards. The Township Committee passed the amended ordinance on August 22, 1994.

On February 13, 1995, Voorhees repealed the challenged ordinance in its entirety. After a May 3, 1995 status conference, all defendants submitted motions to dismiss based on plaintiffs' lack of standing and mootness. The Court denied these motions in *ARC of New Jersey, Inc. v. Township of Voorhees,* No. 93–1399 (D.N.J. filed Mar. 29, 1996) (Brotman, J.).

The third and final phase of this case began with a following pretrial conference, at which the parties determined that the Voorhees defendants would be dismissed from the litigation subject to the plaintiffs' right to seek attorneys fees. At this point, only the State of New Jersey remained as a defendant in order to defend its conditional use enabling statute dealing with group homes. Following a full briefing schedule, the Court granted plaintiffs' motion for summary judgment. *Arc of New Jersey, Inc. v. State of New Jersey,* 950 F.Supp. 637 (D.N.J.1996). In so doing, the Court invalidated a portion of *N.J.S.A.* 40:55D–66.1 under the FHA. *Id.* at 20–21. The Court stated that it would entertain an application for reasonable attorneys fees and costs to be assessed against the State of New Jersey pursuant to the FHA fee-shifting provision, 42 U.S.C. § 3613(c)(2) (1994 & Supp.1997) and against the Voorhees defendants pursuant to the Court's November 25, 1996 order dismissing them from the case. *Id.* at 23.

Plaintiffs' brief in support of its fee application, the separate reply briefs of defense counsels Botcheos and Bonfiglio, and plaintiffs' subsequent reply brief are now before the Court. By way of a letter dated March 7, 1997, Deputy Attorney General Judith A. Nason informed this Court that the State of New Jersey had reached an agreement with plaintiffs' counsel, the Community Health Law Project, regarding payment of attorneys fees incurred in litigating their case against the State. Accordingly, all that remains to be decided by the Court is whether plaintiffs' counsel are entitled to reasonable attorneys' fees for litigation costs incurred against the Voorhees defendants and if so, the amount of such fee.

## B. Discussion

### I. Prevailing Party Status

A prevailing litigant is ordinarily not entitled to collect fees from the losing party. *Alyeska Pipeline Serv. v. Wilderness Soc'y,* 421 U.S. 240, 245, 247, 95 S.Ct. 1612, 1615, 1616, 44 L.Ed.2d 141 (1975). However, Congress and the New Jersey Legislature have carved out exceptions to the so-called "American Rule" by allowing for fee shifting under certain civil rights statutes. Both the federal Fair Housing Act (hereinafter "FHA"), 42 U.S.C. § 3613(c)(2) (1994 & Supp.1997), and the New Jersey Law Against Discrimination ("NJLAD"), *N.J.S.A.* 10:5–27, provide that the court may allow the prevailing party "a reasonable attorneys fee and costs."

While the awarding of counsel fees under these statutory provisions is discretionary, defendants do not seriously contest the notion that some reasonable attorneys' fees will be awarded. Defendants' main objections concern the number of hours expended against the Voorhees defendants, the hourly rate to be applied, and whether these hours are subject to a multiplier under the NJLAD.

As previously noted, defendants have filed two briefs by two separate attorneys, one by George J. Botcheos, Esquire (hereinafter the "Botcheos Brief"), and the other by Peter J. Bonfiglio, III, Esquire (the "Bonfiglio Brief"). These briefs do not seriously contest the fact that plaintiffs are "prevailing parties" for purposes of the applicable fee-shifting statutes. Indeed, the Botcheos Brief concedes that "[a]s far as Voorhees Township is concerned, plaintiffs succeeded in the elimination of the objectionable ordinance and from September 28 forward its [sic] sole objective was to have the [state enabling] statute ruled unconstitutional." Botcheos Br. at 3. Nowhere in the Bonfiglio Brief is

there a compelling reason for the Court, in its discretion, to decline to award a fee to plaintiffs' counsel. *Id.* at 10.

To be deemed a "prevailing party," a plaintiff need only have achieved modest success in litigation. Success on "any significant issue ... which achieves some of the benefit ... sought in bringing suit" suffices. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Ashley v. Atlantic Richfield Co.,* 794 F.2d 128, 131 (3d Cir.1986). A suit which forces a defendant to do more than it was already committed to do confers prevailing status. *Id.* at 136. Even a nominal damages award is sufficient. *Farrar v. Hobby,* 506 U.S. 103, 112–14, 113 S.Ct. 566, 573–74, 121 L.Ed.2d 494 (1992) (citing *Texas State Teachers Assn v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 790, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989) (degree of plaintiff's success does not affect eligibility for fee award)). That an action ultimately ends in settlement—as in the case at bar—rather than being fully litigated is irrelevant to the prevailing party inquiry. *Ashley,* 794 F.2d at 131–32.

■ A further requirement is that the obtained relief be "causally connected to the prosecution of the complaint." *Id.* at 131. A causal connection is established so long as the litigation was "a material contributing factor" in bringing about the benefit obtained. *Wheeler by Wheeler v. Towanda Area Sch. Dist.,* 950 F.2d 128, 132 (3d Cir. 1991) (citations omitted). In the settlement context, only a totally frivolous lawsuit which results in the defendant doing no more than it was already committed to do "fails to satisfy the causal connection" requirement. *Disabled in Action of Pennsylvania v. Pierce,* 789 F.2d 1016, 1019–20 (3d Cir.1986). Setting aside the later litigation against the State of New Jersey, and focusing only on plaintiffs' action against the Voorhees defendants, the Court finds that but for plaintiffs' lawsuit, the Voorhees conditional use ordinance would not have been repealed.

The Bonfiglio Brief for defendants suggests that "the entire litigation was unnecessary" in light of Judge Harold Ackerman's decision in *AAMH v. City of Elizabeth,* 876 F.Supp. 614 (D.N.J.1994) (invalidating the State's conditional use enabling statute, *N.J.S.A.* 40:55D–66.1, under the FHA). Bonfiglio Br. at 9. Defendants seem to suggest that it was the decision in that case, rather than plaintiffs' action, that brought about the change sought by plaintiffs. This argument lacks merit. Plaintiffs filed the instant lawsuit on April 7, 1993, *Id.* at 1. Defendants concede that they offered to repeal the Township's ordinance at a September 28, 1993 scheduling conference before the Magistrate Judge. *Id.* And they even concede that Judge Ackerman issued his *AAMH* decision on *October 25, 1994. Id.* at 2. The *AAMH* decision could not have precipitated the Township's offer of repeal on September 28, 1993 when the decision was still thirteen months in the offing. Unless the Voorhees defendants had a crystal ball in use on September 28, 1993, this is simply not possible.

The comments of a Township Committee member reveal that defendants were not inclined to repeal the objectionable provision on their own and that someone had to force them to do so. In response to a then-Township attorney's concerns about the ordinance, this particular Committee member stated:

> If this was in there, they'd have to test it. Maybe it wouldn't stand up, but [the objectors] understand that. . . . If we put it in there and its gets blown out, it gets blown out.

Tr. of Voorhees Township Committee Meeting, March 25, 1991 at 13:19–25. Given this attitude, it does not strain credulity to conclude that defendants were more than willing to dispense with their municipal ordinance—but only when it became clear that plaintiffs' suit had merit. It took a lawsuit to move defendants to do more than they were already committed to doing, which is to say, nothing. Plaintiffs' action, which brought about settlement, was anything but "frivolous." Plaintiffs ultimately obtained everything they wanted: the invalidation of the municipal conditional use ordinance and of the state enabling statute. Plaintiffs' lawsuit was clearly the cause of the successful resolution of this case in plaintiffs' favor.

Once the Court determines that a plaintiff has prevailed, plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1939. "A plaintiff who prevails under a civil rights statute that contains a fee-shifting provision

'ordinarily is to be awarded attorneys fees in all but special circumstances ...'." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978) (citation omitted) (construing Title VII of the Civil Rights Act of 1964); *Bryant Woods Inn, Inc. v. Howard Cty., Maryland*, 124 F.3d 597, 606 (4th Cir.1997) (concluding that FHA draws on same fee-shifting policies as Title VII of Civil Rights Act and that district court was correct in applying *Christiansburg* standard to attorneys fee application under 42 U.S.C. § 3613(c)(2)); *Oxford House–A v. City of Univ. City*, 87 F.3d 1022, 1024 (8th Cir.1996) ("prevailing party" also has same meaning as under the more general civil rights fee-shifting statute, 42 U.S.C. § 1988(b)). The "special circumstances" exception is an extremely narrow one applied only in unusual circumstances and then only upon a strong showing by the party asserting it. *Ashley*, 794 F.2d at 134 n. 9 (quotation marks omitted). Defendants' briefs do not offer any evidence that special circumstances exist, and defendants do not make strenuous arguments against the award of a fee. Indeed, through settlement the plaintiffs received everything they wanted from the Voorhees defendants: the Township's discriminatory and unconstitutional ordinance was repealed. The Court concludes that plaintiffs are entitled, as prevailing parties, to reasonable attorneys' fees. What remains for the Court to decide is the amount of those fees.

## II. Amount of Attorneys' Fees

To determine what is a reasonable fee for fee-shifting purposes, the Court must look to what is called the "lodestar" figure. *City of Burlington v. Dague*, 505 U.S. 557, 559–60, 112 S.Ct. 2638, 2639–40, 120 L.Ed.2d 449 (1992), *citing Pennsylvania v. Delaware Valley Citizens' Council For Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (*Delaware Valley I* ). The Court arrives at the lodestar figure by multiplying a reasonable number of hours by a reasonable hourly rate. *Id.* This figure may not be "enhanced" under federal fee-shifting statutes by applying a multiplier to account for the contingent nature of the success of the litigation or other considerations. *City of Burlington*, 505 U.S. at 566, 112 S.Ct. at 2643. There is a "strong presumption" that the lodestar represents the reasonable fee. *Id.* at 562, 112 S.Ct. at 2641.

Based on the parties' submissions, the Court must determine how many hours plaintiffs reasonably expended on this case, whether the hourly rates claimed by the two plaintiffs' attorneys are reasonable, and finally whether the lodestar figure accumulated against the Voorhees defendants is subject to a multiplier under the NJLAD. The Court will address these issues in turn.

### (a) The Number of Hours

Two attorneys from the Community Health Law Project (hereinafter "the Project") represented the plaintiffs at various points in this litigation, David J. Popiel, Esquire ("Popiel"), and Susan E. DiMaria, Esquire ("DiMaria"). Plaintiffs' brief in support of their fee application sets forth the attorneys' hours spent working on this case (including travel time) and the billing rates of both attorneys. The figures claimed by plaintiffs' counsel are reproduced below [2]:

| | vs. Voorhees | vs. State | vs. Voorhees and State | Travel | Total | Total Fees |
|---|---|---|---|---|---|---|
| David Popiel | | | | | | |
| Time | 147.9 | 38.8 | 37.9 | | 224.60 | $ 56,150 |
| Travel | | | | 26 | | $ 2,600 |
| Susan DiMaria | | | | | | |
| Time | 148.4 | 40 | 44.6 | | 233 | $ 40,775 |
| Travel | | | | 22 | | $ 2,200 |
| TOTAL | 296.3 | 78.8 | 82.50 | 48 | 457.6 | $101,725 |

**2.** The figures reflect Popiel's requested hourly rate of $250, DiMaria's requested hourly rate of $175, and travel time billed at $100 per attorney. The appropriateness of the hours expended, the hourly rates, and the hours arrived at for travel time will all be discussed *infra*, § (b). The Court notes, upon review of the time sheets, that the two figures for travel time were backwards and not entirely accurate. DiMaria should be assigned 25.9 hours and Popiel should only get credit for twenty-two hours.

Plaintiffs' Exhibit A, appended to Plaintiffs' Br. in Support of Fee Application (hereinafter "Exhibit A").

■ Counsel for the Voorhees defendants contend that some of the hours shown above for Popiel and DiMaria were not reasonably expended. From September 28, 1993 onward, say defendants, plaintiffs really had no quarrel with Voorhees Township because that was the date the Township suggested repeal of the conditional use ordinance. Botcheos Br. at 3. "Any and all fees incurred by plaintiffs subsequent to September 28, 1993 were solely and directly related to plaintiffs' insistence that the state statute be found unconstitutional." *Id.* (emphasis supplied). Rather than allow the Voorhees defendants to be dismissed from the suit on September 28, 1993, plaintiffs "chose to hold Voorhees in the suit until 1996 at which time Plaintiffs dismissed their complaint against Voorhees, subject only to this [fee application]." Bonfiglio Br. at 5.

Defendants' position is without merit. Despite defendants' suggestion and assurances of repeal at various points in this litigation, repeal did not become a reality until August of 1994. Defendants could not have deemed themselves dismissed from the case as of September 28, 1993 because they never asked the Court to be dismissed based on this promise of repeal. The Court is similarly perplexed how defendants can claim they were dismissed so very early in the litigation and yet still deem themselves enough a part of it to follow the briefing schedule for dispositive motions filed in 1994 and to file a motion to dismiss plaintiffs' Complaint as moot and for lack of standing in 1995. The Court is unpersuaded by this one-foot-in, one-foot-out theory of Voorhees' involvement. As plaintiffs also correctly point out, the outcome of any litigation is never certain. Pls' Reply Br. to Defs' Opposition to Pls' Fee Application ("Plaintiffs' Reply Brief") at 2. Plaintiffs should not be faulted for doing the

necessary legwork against the Voorhees defendants when they were clearly still a significant presence in this ongoing litigation.

■ Turning now to the actual time claimed by plaintiffs' counsel in Exhibit A, *supra,* the Court will not consider time allocated by plaintiffs expended solely against the State of New Jersey, as this defendant has settled with plaintiffs on fees.[3] The Court instead will look at the hours claimed by plaintiffs' counsel against the Voorhees defendants. In so doing, the Court must undertake a review of the hours claimed and cannot passively accept the submissions of counsel in determining the ultimate lodestar amount. As one circuit court of appeals has ably stated:

It does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended. In the private sector, "billing judgment" is an important component in fee setting ... Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority. Thus, no compensation is due for nonproductive time. For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.

*Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (emphasis in original). Our own Third Circuit Court of Appeals has similarly stated that

the district court should exclude hours that are not reasonably expended. Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. Further, the court can reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed and that were distinct in all respects from claims on which the parties did succeed.

*Institutionalized Juveniles v. Secretary of Pub. Welfare,* 758 F.2d 897, 919 (3d Cir. 1985), *quoting Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943 (internal quotation marks omitted). The district court can also deduct hours when the fee petition inadequately doc-

---

3. By way of letter dated March 7, 1997, Deputy Attorney General Judith A. Nason informed the Court of the State of New Jersey's fee settlement with the Community Health Law Project.

uments the hours claimed. *Rode*, 892 F.2d at 1183.

■ The party requesting fees bears the burden of proving that the request is reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990). In response, the party challenging the fee petition must make specific objections to the requested fee. *Id.* (citing *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir.1989)). Turning first to the time claimed by Popiel, the Court finds that some reductions are in order. He designates 37.9 hours as expended "vs. Voorhees and State." Exhibit A, *supra*. A review of his billing records does not reveal how these hours were allocated. It is quite possible that of these 37.9 hours the issues dealt with by Popiel were common to both Voorhees and the State. Given that the State of New Jersey is not a party to plaintiffs' fee application, and in the absence of better documentation, the Court will split the 37.9–hour figure down the middle. Reduced by fifty percent, that figure comes to 18.95 hours.

■ For the time figure against Voorhees alone shown in Exhibit A, 147.9 hours, defendants claim that 28.3 of these hours researching federal standing should be excluded. Botcheos Br. at 4–5. They argue that this issue was moot and the research unnecessary. The Court will not reduce this figure as significantly as perhaps defendants would like. Federal standing *was* an issue in the motions filed by defendants. The Voorhees defendants filed a motion to dismiss plaintiffs' Amended Complaint on standing and mootness grounds on June 22, 1995, which the Court denied on March 29, 1996. As the result shows, plaintiffs' research could not have been as wholly frivolous as contended in defendants' briefs. That Popiel did his federal standing research earlier in this case is not as relevant as defendants contend. Botcheos Br. at 4–5. At some point, he

would have had to do this research. He simply chose to do it sooner rather than later. The Court finds nothing inherently unreasonable about an attorney researching issues which may become issues later in a case. That is simply the mark of a thorough lawyer who is covering all possible angles. A reduction of twenty percent of the hours spent on federal standing is appropriate, however. As the D.C. Circuit observed, "billing judgment" is an important consideration. The hours spent on federal standing, subtracting twenty percent of the time, equals 22.64 hours.[4]

■ Defendants claim that the 16.3 hours Popiel spent drafting the Complaint in this case should be reduced. Botcheos Br. at 5. They contend this constitutes twenty percent of his time and that it should not take someone with his twenty-two years of experience so long to draft a complaint. Defendants seem to forget that with twenty-six provisions, there was much in the Voorhees ordinance which needed to be addressed, and that the Project's resulting Complaint contained fifteen causes of action. The Complaint was not the kind of document, as defendants suggest, which could have been drafted by a paralegal, Botcheos Br. at 5, using boilerplate language gleaned from a word processing program. The claims in this case raised major civil rights issues at the state and federal levels. The Court finds that 16.3 hours spent on a complaint of this magnitude to be a reasonable figure.

Turning to Popiel's travel time figure of twenty-two hours, plaintiffs have not rebutted defendants' assertion that the parties' status conference on September 28, 1993 with the Magistrate Judge lasted no more than forty minutes. Botcheos Br. at 6. Yet looking at his billing records, he lists four hours of travel time *and* 4.6 hours for the status conference. The inclusion of both of these figures, the Court suspects, is a mistake, and it will retain Popiel's recorded travel time but reduce the 4.6 hours billed for the

---

4. To keep accounts straight at this point, the Court notes that the total number of hours allowed is 147.9 hours, plus the 18.95 hours (half of what was expended against Voorhees and the State), minus 5.66 hours (off of the "federal standing" total) equals 161.19 hours.

status conference to 40 minutes, or .67 hours.[5]

■ Defendants finally make much ado about Mr. Popiel billing five hours of travel time on April 29, 1992 to and from Voorhees to confer with his clients when this communication "could have very easily been conducted over the phone." Botcheos Br. at 6. While a telephone call may have been simpler, the Court will not substitute its judgment for that of Mr. Popiel, who determined that there are certain unquantifiable benefits inherent in speaking directly to one's clients. Accordingly, the twenty-two hours of travel time listed by him will stand, alongside his working time against the Voorhees defendants, reduced to 157.26 hours.

Referring again to Exhibit A, *supra*, it is difficult for the Court to discern, from looking at DiMaria's billing records, how to allocate against the Voorhees defendants time expended under the category "vs. Voorhees and State." Thus, just as the Court did with Popiel, the Court will split this time down the middle as to DiMaria. Fifty percent of 44.6 hours equals 22.3 hours.

■ Defendants specifically object to DiMaria billing 35.6 hours to the drafting of a mere one point in a summary judgment brief on the FHA. Botcheos Br. at 7. Plaintiffs offer no rebuttal. While the FHA was undoubtedly a central issue in this case, four working days to write one point in a brief is not the most efficient use of a lawyer's time. It is excessive. If plaintiffs' counsel represented a paying client of modest means, some of this time would have to be reduced as a courtesy to the client. The Court will, however, only reduce the 35.6–hour figure by one-third because the FHA issue was so vital to the outcome of this case in plaintiffs' favor. The revised number of hours should thus be 23.85 hours spent on this aspect of the case, 11.75 hours off DiMaria's total of 148.4 hours thus far, plus the 22.3 hours allocated from the "vs. Voorhees and State" category.

■ The final aspect of DiMaria's claimed hours which ought to be reduced is the 8.1 hours spent reviewing plaintiffs' own Complaint in this case. The document itself is under thirty pages and is not so long as to require a full working day just for general "review" without more specificity. The Court believes that a fifty-percent reduction to this amount is appropriate, a reduction to 4.05 hours. Defendants have made no significant objection to DiMaria's travel time. The Court thus sees no reason to engage in line-by-line scrutiny of these entries.

■ Most recently DiMaria, on behalf of the Project, submitted a letter dated November 6, 1997 requesting that the Court consider time she spent preparing the fee application that is the subject of the Court's opinion. She contends that she spent a minimum of eight hours preparing her brief and collecting certifications from other attorneys. While it clear that the Project no doubt spent time preparing its attorneys' fees application, DiMaria was not able to produce time sheets or other documentation for these hours. She advised that she has simply "lost track" of some of her files in the course of her recent move from one Project office to another. The Court appreciates attorney DiMaria's candor. Nevertheless, a district court is free to deduct hours when the fee petition inadequately documents the number of hours claimed. *Rode*, 892 F.2d at 1183. The Court will not guess as to what the appropriate number of hours should be in the absence of proper documentation.

As a final tally of DiMaria's hours, then, the Court concludes that 25.9 hours of travel time is an appropriate figure, as is 158.95 hours expended against the Voorhees defendants.

### (b) The Reasonable Hourly Rate

As part of their fee application, plaintiffs request $100 per hour per attorney for travel time. Defendants do not contest this figure. Attorneys Popiel and DiMaria each request hourly fee rates of $250 and $175 respectively. If the Court deems these rates to be reasonable, they will be used in calculating the lodestar amounts to be awarded.

5. For tracking purposes, Mr. Popiel's running total of working hours (not including travel time) is 161.19 hours, minus 3.93 hours, equals 157.26 hours.

■ The Third Circuit Court of Appeals has held that the entire State of New Jersey constitutes a single "market" for purposes of determining a reasonable prevailing rate in the community. *Public Interest Research Group of New Jersey v. Windall*, 51 F.3d 1179, 1186–88 (3d Cir.1995). Certifications from three private attorneys place Popiel's rate of $250 well within the range charged by civil rights plaintiff's counsel in the District of New Jersey. *See* Certifications of Elliot Baumgart, Esquire, Kevin Kiernan, Esquire, and Robert Westreich, Esquire, appended to Pls' Br. Popiel has been in practice for twenty-two years as of the date of plaintiffs' fee application and has specialized in litigating the rights of those with disabilities for twenty of those years. Pls' Br. at 12. The attorneys who supplied certifications in support of plaintiffs' fee application are themselves experienced civil rights attorneys who are familiar with the area of the law in which Popiel practices. Mr. Westreich, for example, places the rates of attorneys like Popiel in the range of $275 to $300 per hour, a figure higher than what Mr. Popiel requests. Westreich Certification, Popiel A.F. at 2. Defendants object to Popiel's requested hourly rate, Botcheos Br. at 6, but offer no attorney certifications of their own to show that his requested hourly rate is unreasonable in the legal services market at issue. The Court will therefore accept $250 as a reasonable hourly rate for Popiel.

DiMaria has been practicing law since 1987 and has specialized in the rights of persons with disabilities since 1992. Pls' Br. at 13. She spent her first five years in private practice specializing in land use cases, including zoning applications and prerogative writ litigation in state courts seeking reversal of adverse board decisions. *Id.* This background was particularly useful in light of the nature of this litigation which invalidated a municipal zoning ordinance and its state enabling counterpart.

■ In support of plaintiffs' fee application, Mr. Westreich certifies that DiMaria functions at the level of a "junior partner or senior associate in a private firm." Certification of Robert Westreich, Esq., appended to DiMaria Aff., at 2. He recommends an hourly

rate of $165 per hour. *Id.* Bruce Samuels, Esquire, an attorney with 13 years of experience in land use law, states that in his opinion, a range of $165 to $175 is reasonable for DiMaria's level of expertise. Certification of Bruce Samuels, Esq., appended to DiMaria Aff., at 2. Mr. Baumgart, in his certification, states that DiMaria's requested $175 per hour fee is reasonable. Certification of Elliot Baumgart, appended to Popiel Aff., at 6. Given the dearth of any rebuttal certifications from defendants, the Court will award DiMaria her requested hourly rate of $175 per hour.

■ With regard to plaintiffs' hourly rates, defendants argue that even though plaintiffs' attorneys are affiliated with a public-interest, non-profit law firm, they are unfairly attempting to use the rates of private counsel in their fee requests. Botcheos Br. at 6. Defendants err in assigning any relevance to the Project's public interest focus as a reason to justify lower hourly rates. The lodestar is based rather on the prevailing markets rates for attorneys in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Reasonable fees are "to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Id.* Defendants wrongfully make the assumption that public-interest attorneys are only entitled to cut-rate hourly fees, an assumption the lodestar and this Court decline to make. Without offering their own certifications showing plaintiffs are entitled to more modest hourly rates, defendants have not met their burden of providing sufficient objections so as to put plaintiffs on notice.

Based on the foregoing, the Court finds that the basic lodestar counsel fees for plaintiffs' attorneys are as follows:

| **Popiel:** | 22 hours (travel) × $100 | = | $ 2,200 |
| | + 157.26 hours × $250 | = | $39,315 |
| | | = | $41,515 |
| | | | |
| **DiMaria:** | 25.9 hours (travel) × $100 | = | $ 2,590 |
| | + 158.95 hours × $175 | = | $27,816.25 |
| | | = | $30,416.25 |

The Court will next consider whether these subtotals accumulated against the Voorhees

defendants are subject to any type of fee enhancement.

### (c) Fee Enhancement Under the New Jersey Law Against Discrimination

Federal case law prohibits the enhancement of attorneys' fees under federal fee-shifting statutes. *City of Burlington,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449. In their brief, plaintiffs concede they could not seek a multiplier against the State of New Jersey, even before the fee settlement, against whom all claims were federal. Pls' Br. at 14. However, plaintiffs brought suit against the Township of Voorhees and the Township Committee under, *inter alia,* the New Jersey Law Against Discrimination (NJLAD). *N.J.S.A.* 10:5–27.1; *see* Compl., Count VIII. Under this state statute, plaintiffs seek against the Voorhees defendants a fee enhancement of one hundred percent, a doubling of the lodestar amount. Pls' Br. at 16.

The United States Supreme Court has specifically held in *Blum,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891, that the "novelty [and] complexity of the issues" in a given case, "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are all factors reflected in the basic lodestar amount and cannot serve as independent bases for increasing the overall fee award. *Id.* at 898–900, 104 S.Ct. at 1548–50, (citing *Delaware Valley I,* 478 U.S. at 565, 106 S.Ct. at 3098). Although upward adjustments of the lodestar figure are still permissible, *Blum,* 465 U.S. at 901, 104 S.Ct. at 1550, *Delaware Valley I,* 478 U.S. at 565, 106 S.Ct. at 3098, such modifications are proper only in certain "rare" and "exceptional" cases, supported both by "specific evidence" on the record and detailed findings by the lower courts, *Blum,* 465 U.S. at 898–901, 104 S.Ct. at 1548–50, *Delaware Valley I,* 478 U.S. at 565, 106 S.Ct. at 3098. To remove any danger of "double counting," the *Delaware Valley I* Court held, *inter alia,* that the overall quality of performance ordinarily should not be used to adjust the lodestar. *Id.* at 566, 106 S.Ct. at 3098.

In a continuation of the *Delaware Valley* saga, Justice O'Connor, whose concurring opinion is now regarded as the "holding" of the case, *Rendine v. Pantzer,* 141 N.J. 292, 319, 661 A.2d 1202 (1995) (citing *Fadhl v. City and Cty. of San Francisco,* 859 F.2d 649, 650 n. 1 (9th Cir.1988)), opined:

> I would also hold that a court may not enhance a fee award any more than necessary to bring the fee within the range that would attract competent counsel. I agree with the plurality that no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 733, 107 S.Ct. 3078, 3090, 97 L.Ed.2d 585 (1986) (*Delaware Valley II* ) (O'Connor, J., concurring) (citation omitted). Justice O'Connor added that a court should also not award any enhancement based on the "legal" risks or risks peculiar to the case. *Id.* at 734, 107 S.Ct. at 3091.

■ Despite the prohibition of fee enhancement of successful federal claims, the Supreme Court of New Jersey has declined to follow the United States Supreme Court's decisions in this area. The New Jersey court has instead interpreted the NJLAD more broadly than the federal courts have construed federal civil rights statutes with regard to attorneys' fees. The court has said:

> A counsel fee awarded under a fee shifting statute cannot be 'reasonable' unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of the result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed.

*Rendine,* 141 N.J. at 338, 661 A.2d at 1228. The New Jersey court has suggested "contingency enhancements" between five and fifty percent of the lodestar amount, with the typical range being twenty to twenty-five percent. *Id.,* 141 N.J. at 343, 661 A.2d at 1231. Such enhancements should never exceed one hundred percent (the figure requested by plaintiffs), and this doubling of the lodestar is appropriate only in the "rare

and exceptional case" in which "risk of non-payment has not been mitigated" and is an "economic disincentive independent of that created by the basic contingency in payment ... [and] the result achieved ... is significant and of broad public interest." *Id., citing Delaware Valley II,* 483 U.S. at 751, 107 S.Ct. at 3100 (Blackmun, J., dissenting). The *Rendine* court went on to state:

> Enhancements of that magnitude [one hundred percent] will be reserved for cases of that description in which no prospect existed for the attorney to be compensated by payment of a percentage of a large damages award, and in which the relief sought was primarily equitable in nature.

*Rendine,* 661 A.2d at 1231, 141 N.J. at 343. The Court will now entertain plaintiffs claim that, "A one hundred percent enhancement of the attorneys fee payable by the Township is manifestly reasonable under the circumstances of the instant case." Pls' Br. at 16.

In an effort to justify a one hundred percent fee enhancement, plaintiffs' counsel argue that their situation falls directly within the standards enunciated in *Rendine.* They point out that they were retained entirely on a contingency basis, and that although they sought money damages in the Complaint, plaintiffs' actual damages were slight. *Id.* Obtaining damages was "never the main object of the litigation." *Id.* Rather, plaintiffs sought the eradication of discriminatory zoning laws, relief which is primarily equitable. *Id.* Plaintiffs claim that unlike the typical tort contingency case where attorneys accept representation with the prospect of obtaining a fixed percentage of the ultimate damage award, counsel recognized that their main source of attorneys' fees would derive instead from a statutory fee-shifting award.

Without a doubt, the result obtained by plaintiffs' counsel was significant and is a benefit to the broad public interest of the citizens of New Jersey. Through their efforts, plaintiffs' counsel persuaded the Court to invalidate a statewide zoning law which served as a basis for Voorhees Township's adoption of a conditional use ordinance which discriminated on its face against those with disabilities. Plaintiffs' counsel have effected a change in state law.

On the other hand, they have not shown that this victory constitutes the "rare and exceptional case" in which counsel's risk of not getting paid was not mitigated and acted as an economic disincentive independent of the economic disincentive created by the basic contingency in payment. The Project is a non-profit public interest law firm which specializes in the rights of those with disabilities. As one New Jersey state case involving the Project has stated, the Project, of which Popiel and DiMaria are affiliated, operates by way of donations and grants, and collects a "very small" portion of its funding from statutory fee awards. *H.I.P. v. K. Hovnanian at Mahwah,* 676 A.2d 1166, 1175, 291 N.J.Super. 144, 163 (Law Div.1996).[6] Both Popiel and DiMaria, as attorneys for the Project, are paid salaries. *Id.* The Project, whose sole function it is to represent the public

---

6.  Plaintiffs' counsel urge the Court to disregard *H.I.P.,* which is also cited by defendants. At page 15, n. 8 of their brief, plaintiffs state: "One New Jersey trial court has held that the Law Project, as a non profit, public interest law firm, is entitled only to a minimal multiplier because its use of grants and contracts for daily operating expenses minimized its exposure to the risk of nonpayment.... Such a result defies the U.S. Supreme Court's ruling in *Blum v. Stenson* [sic], *supra,* that reasonable fees are 'to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel' (citation omitted)."

Counsel's reliance on *Blum* here is misplaced. *Blum* dealt with the base market rate in the relevant community of hourly fees to be paid to attorneys. The Supreme Court seemed to be guarding against public-interest attorneys becoming stigmatized in the award of attorneys' fees for the sole reason that they are public-interest attorneys. The Court has *supra* addressed the relevant community and the prevailing market rates based on the representations contained in attorney certifications. Moreover, the Court has seen fit *not* to reduce the hourly lodestar rate based on the Project's public-interest bent. The issue now before the Court, however, is an entirely different one. The Court does not rely on *H.I.P.* for what it may or may not say regarding base attorney hourly fees in the New Jersey market. Rather, the Court looks to this case for what it says about plaintiffs' entitlement to a *contingency enhancement* under the NJLAD—fees which would be *above and beyond* the lodestar amount.

interest, thus requires no "incentive" to take on causes which benefit the public interest. It is precisely because there is an organization like the Project in New Jersey that the need to "attract attorneys to take such cases," *Delaware Valley II,* 483 U.S. at 751, 107 S.Ct. at 3100 (Blackmun, J., dissenting), through the lure of a fee multiplier is obviated. *See also Szczepanski v. Newcomb Med. Ctr., Inc.,* 661 A.2d 1232, 141 N.J. 346 (N.J. 1995) (not limiting fees would serve public interest of encouraging attorneys in private practice to represent clients with meritorious causes of action). The Project is not in the much riskier predicament of the average plaintiff's attorney in private practice who only receives compensation if he or she prevails. Since plaintiffs' counsel earn salaries win, lose, or draw, they are not operating under the same level of risk which the fee multiplier under the NJLAD is intended to compensate.

In *McKenna v. Pacific Rail Serv.,* 817 F.Supp. 498 (D.N.J.1993), *vacated and remanded on other grounds,* 32 F.3d 820 (3d Cir.1994), a case cited by plaintiffs as interpreting the NJLAD, the district court calculated the fee awards by multiplying the number of hours reasonably expended with a reasonable hourly rate, the basic lodestar formula. *Id.* at 519. The district court declined to apply a multiplier, *Id.* at 519–20, in a case brought and specifically tried under the NJLAD, *Id.* at 503, 512–13. *See also Hurley v. Atlantic City Police Dep't,* 933 F.Supp. 396, 430 (D.N.J.1996 ) (one-third enhancement appropriate where jury verdict actually rested on Title VII and the NJLAD). In the case at bar, by contrast, the NJLAD count was only one of many counts in plaintiffs' Complaint. The time sheets provided by plaintiffs' counsel do not reveal that counsel spent any significant time on the NJLAD issue. This statute is only now relied on by plaintiffs in their fee request. Plaintiffs never briefed or argued the NJLAD. Moreover, in disposing of this case, the Court never reached the merits of, or rested its decision on, the NJLAD. *ARC,* 950 F.Supp. 637.

In *H.I.P.,* the court determined that the plaintiffs were prevailing parties under the NJLAD, though only marginally so, thus justifying a minimal five percent NJLAD fee enhancement for the Project's attorneys. *H.I.P.,* 291 N.J.Super. at 161, 676 A.2d at 1175. Whereas the NJLAD was one of the main causes of actions in *H.I.P., Id.,* 291 N.J.Super. at 153, 676 A.2d at 1170–71, the NJLAD played a much less significant role in the outcome of the case presently before the Court. The Court, which decided this case based on the federal FHA, thus declines in its discretion to award a fee enhancement under the NJLAD to Popiel and DiMaria, attorneys for the Project.

There is a strong policy reason undergirding the result the Court reaches today. By denying plaintiffs' counsel a fee enhancement in a case in which the NJLAD was merely pled once, never to be raised again until now, the Court is guarding against attorneys in similar actions simply inserting throwaway NJLAD claims for the sole purpose of taking advantage of the fee multiplier. Such enhancements are more appropriate in cases—unlike this one—in which the NJLAD plays a much more integral role in a party's litigation strategy. It could hardly have been the New Jersey Legislature's intention in enacting the NJLAD that the law be used as a mere bonus incident to purely federal litigation.

### III. Conclusion

For all of the above reasons, the Court reduces the hours claimed by plaintiffs' counsel, David Popiel, Esquire, and Susan DiMaria, Esquire, attorneys for the Community Health Law Project, to more reasonable numbers. The Court will also award plaintiffs' counsel $100 per hour per attorney for travel time, and $250 per working hour for Popiel and $175 per working hour for time expended by DiMaria. By the Court's calculation, these figures come to $41,515 for Popiel and $30,416.25 for DiMaria. A contingency enhancement to these totals based on the New Jersey Law Against Discrimination is, however, inappropriate. A total fee of $71,931.25 is therefore to be paid by the Voorhees defendants to the Community Health Law Project pursuant to 42 U.S.C. § 3613(c)(2) of the federal Fair Housing Act.

The Court will enter an appropriate order.